IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (434) 209-7025 IN THE CUSTODY OR CONTROL OF SPRINT CORP. | ) ) ) ) ) ) ) |

**FILED UNDER SEAL**

Case No. 6:20mj10

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Daniel Bailey, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 434-209-7025 (the "**Target Cell Phone**") with listed subscriber Talisa Mays, whose service provider is Sprint Corp. ("SPRINT"), a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland Park, KS 66251.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3. I am a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since 2017. I am also a Detective with the Lynchburg Police Department (Virginia) and be been so employed since 2002. I am currently assigned to investigate drug trafficking organizations as a member of the DEA, Washington Field Division/Roanoke Resident Office. My duties as a Task Force Officer involve the investigation of various criminal activities of narcotics traffickers and their associates. In investigating these matters, I have acted as a case agent, an undercover agent, and a contact agent for confidential sources. These investigations have resulted in the issuance of federal search warrants, seizure warrants, indictments, and convictions of persons for federal narcotics violations. During my employment as a law enforcement officer, I have received multiple hours of training in narcotics enforcement and investigative techniques, and I have personally participated in numerous investigations. I have also spoken on numerous occasions with informants, suspects, and other experienced narcotics traffickers concerning the methods and practices of drug traffickers, including the methods and practices used by traffickers of methamphetamine, heroin, and cocaine. I have been involved in the execution of numerous search warrants on electronic devices, including cellphones, and in obtaining location information for those devices.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Jerry CARTER Jr. ("CARTER"), and others, are engaged in a conspiracy to violate federal drug laws, specifically: narcotics trafficking, in violation of 21 U.S.C. § 841(a); and offenses

involving the use of communications facilities in commission of narcotic offenses, in violation of 21 U.S.C. § 843(b). There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## STATEMENT OF PROBABLE CAUSE

7. The United States, including the DEA and the Lynchburg Police Department, is conducting a criminal investigation of Jerry CARTER, Jr. ("CARTER") and others regarding violations of distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.

8. Per Federal Bureau of Prisons records, CARTER was released from the Federal Bureau of Prisons on March 15, 2019 after serving a sentence for Conspiracy to Distribute Cocaine. This affiant knows "TWIN" to be an alias for CARTER. This affiant knows CARTER to have a twin brother.

9. Through the course of this criminal investigation Timothy PAIGE, Joseph BROWN, and Jermel STOREY have been identified as criminal associates of CARTER.

10. Timothy PAIGE is currently pending trial for possession with intent to distribute cocaine in the City of Lynchburg and is the subject of a federal investigation for his role in the seizure of approximately three hundred grams of cocaine HCL on December 8, 2018 and possessing approximately 56 grams of cocaine HCL on November 7, 2019.

11. Joseph BROWN is pending federal trial in the Western District of Virginia (6:20-cr-4) for his role in a cocaine trafficking conspiracy. BROWN has been charged with distributing ounces of cocaine HCL and cocaine base.

12. Jermel STOREY has been identified as the leader of this Drug Trafficking Organization. Based on this investigation, STOREY is reported to supply CARTER, PAIGE, and BROWN, in addition to others in the Lynchburg area, with distributable amounts of cocaine HCL. This affiant knows STOREY to have an alias of "JAH" and "SONSON".

13. In November 2019, this affiant requested any transactional data from the Department of Motor Vehicles (DMV) involving CARTER. This affiant later received certified copies of a DMV application completed by CARTER on March 27, 2019. On that application, CARTER claimed a home address of 101 Reichard Drive, Apt 101, Madison Heights VA 24572 and a phone number of 434-229-2864.

14. In April of 2020, the DEA issued an Administrative Subpoena on SPRINT for subscriber information and phone toll record history for 434-229-2864. The subpoena results have shown that the subscriber for the 434-229-2864 is "Talisa Mays" and a billing address of "2971 Galts Mill Road, Madison Heights Va 24572." Also, based on the data obtained, this affiant determined that the number was active between March 15, 2019 and October 17, 2019.

15. Based on phone toll analysis this affiant found that 434-229-2864 was in contact with multiple numbers that had been previously identified as being used by PAIGE, STOREY, and BROWN. CARTER was also found to be in contact with other identified co-conspirators in this drug trafficking organization (DTO).

16.     This affiant cross referenced 434-229-2864 through a phone download of Timothy PAIGE that had been obtained via previously executed federal and state issued search warrants. This affiant found 434-229-2864 listed under the contact name of "JERRY".

17.     Based on the data from PAIGE's phone download, this affiant also found text messages exchanged between PAIGE and 434-229-2864 between the dates of March 22, 2019 and October 17, 2019.  Based on this affiant's training and experience, coded text messages were exchanged discussing narcotic transactions. Those messages include, but not limited to, prices of "zips", which is slang for one ounce of cocaine.

18.     This affiant cross referenced 434-229-2864 through a phone download of Joseph BROWN that had been obtained via previously executed federal search warrant. This affiant found 434-229-2864 listed under the contacts names of "TWIN". No exchanged text messages were located on that phone download.

19.     Further analysis of PAIGE and BROWN's phone downloads, revealed that the **Target Cell Phone** was stored in both co-conspirator's cellular phones under the contact name of "JERRY." This affiant found exchanged text messages regarding quantities of narcotics.

20.     Based on the data from PAIGE's phone download, PAIGE began communicating, via text message, with the **Target Cell Phone** on October 19, 2019 through November 7, 2019 (the date of PAIGE's arrest). Based on this affiant's training and experience, PAIGE and CARTER exchanged coded text messages coordinating the sales of controlled substances. Those messages include, but not limited to, asking about the availability of "joints", which is known to be slang for one ounce of cocaine or one kilogram of cocaine.

21.     Based on the data from BROWN's phone download, BROWN began communicating, via text message, with the **Target Cell Phone** on or about January 7, 2020

through February 21, 2020 (BROWN was arrest on February 28, 2020). During one of the text messages, the **Target Cell Phone** asked BROWN if BROWN had anything for "sonson" (an alias for STOREY). Nothing else in criminal nature was discovered in the text messages.

22. In April of 2020, the DEA issued an Administrative Subpoena on SPRINT for subscriber information and toll record history for the **Target Cell Phone.** The subpoena results have shown that the subscriber for the **Target Cell Phone** is "Talisa Mays" and a billing address of "2971 Galts Mill Road, Madison Heights Va 24572." Also, based on the data obtained, this affiant determined that the number was activated on October 17, 2019 and was still active as of April 21, 2020.

23. Based on phone toll analysis this affiant found that **Target Cell Phone** was in recent contact with multiple numbers that had been previously identified as being used identified and unidentified co-conspirators in this drug trafficking organization (DTO). Those co-conspirators include, but are not limited to, BROWN, PAIGE, STOREY, and Sean MUSE.

24. MUSE has been identified as a multi-ounce cocaine distributor in Roanoke, VA. MUSE was identified has the Source of Supply for the three hundred grams of cocaine HCL mentioned in paragraph 10 of this affidavit.

25. In November 2019, this affiant conducted an interview with Source of Information #1 (SOI-1) who had been arrested for drug trafficking in Lynchburg, Virginia. SOI-1 advised law enforcement that CARTER was a source of supply for cocaine. SOI-1 advised that he/she knew "JAH" to a source of supply for CARTER of cocaine. SOI-1 advised that CARTER would request SOI-1 to travel with CARTER to meet with "JAH" in North Carolina to purchase cocaine HCL. SOI-1 advised that he/she would communicate with CARTER via cellular phone.

6

SOI-1 provided this affiant permission to search through SOI-1's cellular phone. This affiant found the **Target Cell Phone** stored in the phone under the contact name of "Jerry."

26. In April 2020, this affiant obtained information from the ENTERPRISE vehicle rental company that CARTER was currently renting a motor vehicle from the company. A representative from the company advised that CARTER provided a home address of 101 Riechard Drive, Apartment 101, Madison Heights, VA 24572.

27. TFO Bailey conducted a query of 101 Reichard Drive and found it to be an invalid address. TFO Bailey determined that 100 Reichard Drive, Apartment A (also identified as Apartment "101" per Amherst County Emergency Communications), Madison Heights, VA 24572 is a valid address. In April 2020, this affiant conducted a surveillance of that address and observed a vehicle parked in front of Apartment A. A DMV query of that vehicle determined that Talisa Mays was the registered owner.

28. This applicant searched a law enforcement data based that stored phone calls placed by inmates being housed in the Blue Ridge Regional Jail facilities. This applicant found that PAIGE made approximately eighteen calls to the **Target Cell Phone** between the dates of February 14, 2020 through April 21, 2020. During the course of those calls, PAIGE talked to a male subject. During one of those phone calls, a female answered the phone. The female advised PAIGE that she had "his" phone. PAIGE advised that female that he was looking for "Jerry". The female advised that he was doing something else.

29. While reviewing those same calls, this affiant determined that on April 12, 2020, the male communicating from the **Target Cell Phone** advised PAIGE that his Facebook page had been "hacked" and an unknown subject had sent pornographic material to individuals from his account. This affiant located a Facebook account with the name of "Jerry Carter, Jr". This

7

page was found to be open to the public and not set on private. This affiant located on the account page that a post was made on April 12, 2020 stating "Sorry everybody my page was hacked. I would never send trash like that.". This affiant also found several photographs of CARTER posted on that same account page.

30. Based on the totality of the investigation there is probable cause to believe CARTER is involved in the distribution of narcotics and uses the **Target Cell Phone** to conduct this activity. Further, although the **Target Cell Phone** is registered in the name of "Talisa Mays," there is probable cause that it is in fact used by CARTER. In my training and experience, individuals engaged in drug trafficking use cellular phones to communicate and distribute narcotics and carry cellular phones with them while conducting this activity. Therefore, the **Target Cell Phone** will likely reveal important location information concerning CARTER whereabouts, including where he resides, where he conducts narcotics transactions, and where he stores narcotics.

31. In my training and experience, I have learned that SPRINT is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records**.** E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and,

8

in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

32. Based on my training and experience, I know that SPRINT can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the **Target Cell Phone** on SPRINT's network or with such other reference points as may be reasonably available.

33. Based on my training and experience, I know that SPRINT can collect cell-site data about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as SPRINT typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

34. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

35. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

9

90 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

36. I further request that the Court direct SPRINT to disclose to the government any information described in Attachment B that is within the possession, custody, or control of SPRINT.  I also request that the Court direct SPRINT to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with SPRINT's services, including by initiating a signal to determine the location of the Target Cell Phone on SPRINT's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate SPRINT for reasonable expenses incurred in furnishing such facilities or assistance.

37. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

        *s/Daniel Bailey*
        Daniel Bailey, Task Force Officer
        Drug Enforcement Administration

Received by reliable electronic means and sworn and attested to by telephone on this 28th day of April 2020.

*Robert S. Ballou*
ROBERT S. BALLOU
UNITED STATES MAGISTRATE JUDGE